UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALBERT LEON FLETCHER,

        Plaintiff,

v.

                                       Case No. 3:24-cv-286-MMH-LLL

ALLEN A. CARTWRIGHT, ET AL.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff Albert Leon Fletcher, an inmate of the Florida penal system, initiated this action by filing a pro se Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Complaint; Doc. 1). Fletcher is proceeding in forma pauperis and names four Florida Department of Corrections (FDOC) employees as Defendants in the Complaint: Lieutenant Allen Cartwright; Sergeant Malik L. Thomas; Lieutenant A. Arnette; and "Warden" Kody J. Williams.[1] Complaint at 1–3. He asserts the Defendants violated his rights

_____

[1] While Fletcher refers to this defendant as Warden, Defendants presented evidence that Kody Williams is a Classification Officer at the Reception and Medical Center (RMC) and has never held the position of Warden or Assistant Warden during his employment with FDOC. See Doc. 11-5.

under the Eighth Amendment and committed state torts of battery and assault. See generally id.

This matter is before the Court on Defendants' motion to dismiss (Motion; Doc. 11). Fletcher filed a response to the Motion. (Response; Doc. 14). Thus, the Motion is ripe for review.

In his Response, Fletcher states that he mistakenly believed Defendant Kody Williams was the warden responding to his grievances when he listed him as a Defendant in this case. Upon reviewing the Defendants' evidence that Kody Williams never served as a Warden or Assistant Warden, Fletcher requests that "Classification [Officer] Kody Williams be took off my law suit." Response at 9. Based on Fletcher's voluntary request, this action will be dismissed against Defendant Kody Williams.[2]

## II. Fletcher's Allegations[3]

In his Complaint, Fletcher alleges that on December 20, 2023, while housed at RMC, Defendant Thomas woke him up by kicking his bed and telling Fletcher to "get the f- [sic] up" and "get the F- [sic] up befor[e] I put my boot in

---

[2] For this reason, the Court will not discuss Defendant Williams further in this Order.

[3] In considering Defendants' Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Fletcher, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

your ass white boy." Complaint at 4, 5. Fletcher states he stood up and asked Defendant Thomas, "who you talking to like that[?]" Id. Defendant Thomas grabbed Fletcher's arm, and, in turn, Fletcher grabbed Defendant Thomas's arm. Id. at 5. Fletcher asserts Defendant Thomas tried to push Fletcher over a locker rack. Id. at 5. Defendant Thomas then yelled for Defendant Arnette, who entered and "la[id] across [Fletcher's] back" while Defendant Thomas laid on Fletcher's legs. Id. During this time, Fletcher alleges he was flat on the floor with the left side of his face to the ground. Id. He then states Defendant Cartwright ran in, "jumped down," and punched Fletcher "in the right side of [his] temp[]le" five times. Id. at 4, 5. Fletcher asserts this caused the left side of his face to hit the floor. Id. at 5. Fletcher alleges Defendants Arnette and Thomas "did nothing" to stop Defendant Cartwright from hitting him. Id. at 4.

As a result of the use of force, Fletcher avers he has a "plate in [his] left temple and eyebrow," and his eyebrow is no longer the same shape, his eyesight is "just a blur[]," his temple "hurts all the time," and he is unable to see out his left eye. Id. He further states he was denied medical treatment. Id. Fletcher alleges Defendants' actions violated his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause and constituted battery and assault. Id. at 3, 6. As relief, he requests monetary damages and medical care. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal

quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Discussion

Defendants argue Fletcher's Complaint should be dismissed because: (1) Fletcher failed to exhaust his administrative remedies; (2) Fletcher failed to

give pre-suit notice pursuant to section 768.28, Florida Statutes, for his state tort claims; (3) Fletcher's claim is conclusively contradicted by video records; (4) Fletcher failed to disclose his litigation history; (5) Defendants are entitled to qualified immunity for claims brought against them in their official capacities; and (6) Fletcher's request for punitive damages is barred under 18 U.S.C. § 3626(a)(1)(A). See generally Motion.

## A. Sua Sponte Frivolity

To the extent Fletcher attempts to raise a claim of deliberate indifference based on the denial of medical care, the Court is obligated to conduct an independent frivolity review. The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry

regarding a prison official's conduct. <u>Swain v. Junior</u>, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing <u>Farmer</u>, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. <u>See Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); <u>see also Wade v. McDade</u>, 106 F.4th 1251, 1255 (11th Cir. 2024). Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in <u>Farmer</u> and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in criminal law. <u>See Wade</u>, 106 F.4th at 1253. Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Id. at 1262 (enumeration and emphasis omitted).[4]

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his

---

[4] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007)[5] (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Here, Fletcher's assertions fail to state a claim for deliberate indifference. Fletcher makes conclusory allegations that he was denied medical care without any factual assertions to support that any action by a named Defendant rose to the level of deliberate indifference. In the Complaint, Fletcher provides no assertions regarding the denial of medical care while outlining the "facts underlying [his] claim(s)." See Complaint at 5. The only factual assertion beyond the conclusory statement that Fletcher was "denied medical treatment" is his assertion within the Injuries section of his

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Complaint, stating that "the sick call nures [sic] would pick up my sick call but then [] I did not see no body [sic]." Id. at 5. Fletcher names no nurses as defendants in this action. As there are no factual allegations to suggest any action by any of the named Defendants constituted deliberate indifference, the claim is due to be dismissed.

## B. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action regarding prison conditions may be initiated by a prisoner in a district court. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Still, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits[.]" Bryant v. Rich, 530 F.3d 1368,

1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought[.]" Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in the applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 578 U.S. 632, 648 (2016). For an administrative remedy to

be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step
> process for resolving motions to dismiss prisoner
> lawsuits for failure to exhaust. 541 F.3d at 1082. First,

district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824.

According to Rule 33-103.014, an informal grievance, formal grievance,

direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### 2. The Parties' Positions Regarding Exhaustion

In his Complaint, Fletcher asserts he exhausted his administrative remedies, but notes that some of his grievances "came up missing." Complaint at 6–8. In support of his claim of exhaustion, Fletcher attached numerous

grievances and appeals. Doc. 1-1 at 1–28.[6]

Defendants, however, argue Fletcher failed to exhaust his administrative remedies with respect to any Eighth Amendment claim. Motion at 5–10. Specifically, Defendants state Fletcher only raised allegations of excessive use of force in Formal Grievance 2401-209-022 and Appeal 24-6-01726, but the grievance focused on overturning the disciplinary action, rather than the use of force, and the appeal was returned to Fletcher as no informal or formal grievance was filed prior to appealing and because Fletcher raised multiple issues in the appeal. Id. at 6–8. Defendants also suggest the Formal Grievance and Appeal filed are insufficient because they do not: (1) name the officer who allegedly punched Fletcher; (2) name Defendant Arnette in any way; (3) allege Thomas or Arnette failed to prevent Cartwright from allegedly punching him; or (4) allege Thomas or Arnette used excessive force. Id. at 8.

With their Motion, Defendants provide declarations and records regarding Fletcher's exhaustion efforts. See Docs. 11-1 through 11-3. In a sworn declaration, Lawanda Sanders-Williams, an Operations Analyst for the FDOC Bureau of Policy Management and Inmate Appeals, states that between

---

[6] The Court notes that there are many duplications of documents within this attachment, though some copies contain different handwritten notes from Fletcher. See generally Doc. 1-1. The Court has reviewed all the documents and will include citations to all pages on which a document may be found even where it may be duplicative.

December 20, 2023, to March 18, 2024, Fletcher filed five appeals, three of which discussed the December 20, 2023 use of force. Doc. 11-1 at 1. Sanders-Williams further states that all three of those appeals "were returned without action for grieving multiple issues, not providing a formal grievance with the appeal, or not filing a grievance at the lower level." Id. at 2. Jeffery McClellan, FDOC Assistant Warden of Programs at Florida State Prison also states under the penalty of perjury that from December 20, 2023, to March 18, 2024, Fletcher filed seventeen informal and six formal grievances, that none of the grievances complained of excessive use of force, and that none of the grievances referencing the December 20, 2023 incident were approved. Doc. 11-2 at 1. Defendants further submitted a sworn statement from FDOC's backup Grievance Coordinator at Reception and Medical Center, Cordelia McDowell, who states "there was no hinderance or impediment to Inmate Fletcher's use of the grievance procedure at any level." Doc. 11-3 at 1. As support, McDowell outlines the procedure for submission of grievances. Id. at 1–2. McDowell states that every day a classification officer walks around to collect the grievances with a locked box, which has a slot only big enough to slip the grievances inside, and that if an inmate has a grievance the inmate will hold it up to the flap or window then either place it into the box or have the classification officer place it in the box while in the inmate's view. Id. at 1. McDowell explains the classification officer will continue through the wing,

16

before continuing to the next wing or to return the box to the grievance coordinator, who is the only person in possession of a key to unlock the grievance box. Id. at 2.

In his Response, Fletcher states that he did exhaust his administrative remedies but that he "filed it over and over [but] it comes up missing parts or disappear[s] all together [sic]." Response at 1. Fletcher requests this Court "see all grievances and informales [sic] that I sent with the 1983 form to the courts on 3-18-2024." Id. at 1.[7]

### 3. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion and Response and accept as true Fletcher's allegations. <u>See</u> <u>Whatley</u>, 802 F.3d at 1209. If Fletcher's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. <u>See</u> <u>id.</u>

Accepting Fletcher's allegations that he exhausted these claims through grievances and that some of those grievances went missing, the Court finds

---

[7] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. <u>See</u> <u>Kinard v. Fla. Dep't of Corr.</u>, No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Fletcher that he had forty-five days to respond to any motion to dismiss. <u>See</u> Order (Doc. 5) at 3. Fletcher responded to the Defendants' Motion (Doc. 14) and addressed the exhaustion argument by relying on the grievance records that he attached to his Complaint. He does not suggest that he requires additional discovery. As such, Fletcher has received notice and an opportunity to develop the record on exhaustion.

dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process and considers the Defendants' arguments about exhaustion and makes findings of fact.

### 4. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court turns to the second prong of the <u>Turner</u> analysis and finds Fletcher had available administrative remedies that he failed to properly exhaust before filing this action. The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." <u>Chandler</u>, 379 F.3d at 1287 (quotations and citation omitted) (alterations in original). However, to properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules," <u>Jones</u>, 549 U.S. at 218 (quotation marks omitted). Moreover, prisoners must "properly take each step within the administrative process." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1378 (11th Cir. 2008). The FDOC's rules require that informal and formal grievances be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin. Code. R. 33-

18

103.005(2)(b)2; 33-103.006(2)(d)-(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002), <u>overruled in part on other grounds by</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007); <u>see</u> <u>Harvard v. Inch</u>, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).[8]

As a preliminary matter, the Court observes that prison officials returned without action many of the grievances and appeals Fletcher submits to show exhaustion due to his failure to comply with procedural requirements. In Informal Grievance 209-2401-0104, Fletcher requested the retention of video records related to the disciplinary report stemming from the December 20, 2023 incident, but officials returned the grievance without action because Fletcher had addressed the issue previously in Grievance 2401-209-022. Doc. 1-1 at 11. In Appeal 24-6-01726, Fletcher requested the retention of video recordings and a housing log, grieved the lack of medical treatment, and stated Fletcher would be filing a federal lawsuit for abuse and lack of treatment. <u>Id.</u> at 7. Officials returned it without action because the appeal "address[ed] more

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

than one issue and/or complaint." Id. at 6. In Appeal 24-6-05037, Fletcher complained of lack of medical treatment and lack of responses to grievances, discussed the December 20, 2023 incident, and requested "money and job for remedy," but officials returned that appeal without action because Fletcher failed to provide a copy of the formal grievance or an acceptable reason to bypass that level of the grievance procedure. Id. at 25–26, 28. In Appeal 24-5-05234, Fletcher complained of "cruel and unusual punishment" based on the December 20, 2023 incident, but officials also returned this appeal without action because Fletcher failed to provide a copy of the formal grievance or an acceptable reason to bypass that stage of the grievance process. Id. at 1, 2. Because Fletcher failed to follow the procedural rules and take each step in the administrative process, Fletcher did not properly exhaust his administrative remedies through these grievances and appeals. See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218; see also Hersh v. Scott, No. 3:22-CV-408-BJD-LLL, 2023 WL 2242551, at *2–3 (M.D. Fla. Feb. 27, 2023) (finding that where grievances were returned without action, "they d[id] not satisfy the exhaustion requirement").

Fletcher's Informal Grievance 209-2401-0070, and corresponding Formal Grievances 2401-209-057 and 2402-205-032, do not show that he exhausted all administrative remedies as he failed to submit an appeal following the denials of the formal grievances. Doc. 1-1 at 3–5, 12–14. Fletcher's failure to take "each

20

step within the administrative process" precludes these grievances from establishing exhaustion. See Bryant, 530 F.3d at 1378. More importantly, even if there was an appeal, these grievances would not have exhausted the claims presented in his Complaint. In his Informal Grievance 209-2401-0070, Fletcher stated:[9]

> I put in 4 sick calls about my left temple and eyesight [since] the [] date of 12-20-2023. I am in pain, the shape of my temple plate is changed, and my left eyesight is really bad. I was beat in right temple left against floor banging, was warned to not complain about issue when being locked up staff responsible runs lock up 5 days a week if I spoke to nurses or doctor in dorm, they will report it to him, and I'll be retaliated on for sure. I am being denied medical treatment. Turned in 4 medical request[s] seen nobody about temple [or] eyesight. Was told off by nurse who picks up sick call when asked about a form and about ones turned in. I'm in pain my plate is [illegible]. Was warned when locked up to keep quiet.

Doc. 1-1 at 5 (cleaned up). The prison official denied the informal grievance on January 11, 2024, stating that there was no record Fletcher submitted any sick call with his concerns, that there were no injuries or complaints during Fletcher's post use of force evaluation, and that the nurse makes rounds daily and Fletcher could request a sick call or declare a medical emergency for evaluation. Id.

---

[9] When quoting Fletcher's grievances and appeals throughout this Order, the Court has corrected numerous spelling and punctuation errors for ease of reading.

In one of the formal grievances following this denial, 2401-209-057,

Fletcher wrote:

> This is a grievance after doing an informal grievance
> about medical not responding to sick call requests. I
> put in about my temple plate and eye. Not seeing me
> and denying I put them in. I've put in 4[,] that one was
> concerning my ankles and feet hurting [and] 3 about
> my plate that was bent out of shape on 12-20-2023.
> The day I got locked up my temple was on the floor,
> and I got hit 3 or 4 times on the right temple and
> caused my left to hit the floor. I'm in pain and my
> eyesight is out of focus and blurry. I was warned on
> the way to medical to keep my mouth shut so I did so
> when being checked out before going to lock up. The
> beating took place in F1 at 10:07 with me laying [sic]
> flat on ground [with] palms flat on [the] floor, not
> moving at all. I'm trying to see a doctor about my
> temple plate being bent out [of] its normal shape and
> pain and eyesight being blurry. I turned in medical
> request[s] on 12-27-2023 and on 1-3-2024 about this in
> morning to sick nurse. I've seen [a] doctor over a sick
> call. I did in population a few days before getting
> locked up about sores all over me and about my med
> levels for seizure med. No body[']s seen me over the
> plate and eye or about my feet. I was talked to bad
> about turning in sick call request and another nurse
> made comment about me [illegible]. Request remedy
> to see a doctor about issue.

Id. at 4, 13 (cleaned up). Prison officials denied this formal grievance on

January 26, 2024, stating the response to his informal grievance was

appropriate since there was no record of his sick call requests on the specified

dates, he had been seen by the primary care physician on January 8, 2024 for

a follow-up, and the records of that visit had no mention of the listed

complaints. Id. at 14.

In the other formal grievance, 2402-205-032, Fletcher stated:

> This is a request for remedy for relief for an informal grievance that was denied on 1-11-2024[10] about me being denied medical treatment. I turned in 4 sick calls about my temple plate being bent out [of] shape, my eyesight [can] no longer see [] out [of] my left eye. It feels like something is scratching my eyeball when I look to the left. This was done to me at Reception and Medical Center Lake Butler in F1 Dorm at 10:07. I was laying on the floor with 3 officers holding on to me, my hands were flat on the floor so were my arms, I was not resisting, and Lt. Cartwright came running in dorm and started punching me in my right temple causing my left to hit the floor 4 or 5 times until Major Starling told him to stop hitting me. 69 inmates [saw] this. I called 45s and 47s as witnesses. They got word to me nobody ever came to them about being [a] witness in my DR investigation. There [are] 4 cameras in sleeping bay of F1[.] I called for them to be view[ed] to prove CO Thomas DR statement of facts were false. He never asked any inmate for medical passes. He kicked my bed and told me to get my fucking ass up before he kicked it. When I stood up, he grabbed my arm. I pulled his [arm] off because he was hurting me. He then pushed me over an empty locker frame I held on and held him to keep from being hit then I go to lock up where Lt. Cartwright is the housing Lt. 5 days a week. The nurse's offices [are] right beside his office. I turned in 4 sick calls on wing 2, cell 2107, see auto recording of nurse doing pickup for sick calls on 1-3-2024, 1-11-2024, 1-17-2024, 1-4-2024, and 12-27-2023. I seen [sic] nurse one time about blood in stool [but] never about eyesight, pain, and shape of plate. I put in informal grievances never heard back. I put in a direct grievance to the secretary['s] office never heard back. The person picking them up clearly took them for

---

[10] Informal grievance 209-2401-0070.

remedy. Nurse and staff need firing.

Doc. 1-1 at 10 (cleaned up) (footnote not in original). Prison officials denied the grievance on February 7, 2024, stating that further investigation could not corroborate his allegations regarding the health care staff member and that there were no medical encounters documented for his specified dates. Id. at 8.

In the Complaint, Fletcher asserts Defendants violated the Eighth Amendment when they allegedly subjected him to constitutionally excessive force and/or failed to intervene during others' excessive use of force. However, while Fletcher mentions the December 20, 2023 incident in these grievances, what he complains about is the denial of medical care, not the use of force and failure to intervene. In the first sentence of both formal grievances, Fletcher makes clear that the grievances were "about medical not responding to sick call requests" and "being denied medical treatment." Doc. 1-1 at 4, 10, 13. Further, he requested to see a doctor and for medical staff to be disciplined. Id. It is evident from the responses that the prison officials also understood the grievances to complain about medical care, not the use of force. Accordingly, the Court finds these grievances did not suffice to alert officials to the claims Fletcher raises in the Complaint. See Hamze v. Warner, No. 3:21-CV-565-MMH-JBT, 2024 WL 111923, at *8 (M.D. Fla. Jan. 10, 2024) (finding plaintiff's grievances that challenged a disciplinary report arising from corrections officers' use of force did not properly exhaust his Eighth Amendment excessive

24

force claims); <u>Berry v. Keith</u>, No. 3:20-CV-261-MMH-JBT, 2021 WL 1561493, at *6 (M.D. Fla. Apr. 21, 2021) (same); <u>Lawson v. Crutchfield</u>, No. 5:15-CV-150-MP-GRJ, 2016 WL 5219466, at *7 (N.D. Fla. July 5, 2016) (same), <u>report and recommendation adopted</u>, No. 5:15-CV-00150-MP-GTJ, 2016 WL 5219626 (N.D. Fla. Sept. 21, 2016).

Similarly, in Formal Grievance 2401-209-022 and Appeal 24-6-04261, Fletcher challenges the disciplinary report related to the December 20, 2023 incident, not an unconstitutional use of excessive force or failure to intervene. Doc. 1-1 at 16, 18, 22. While he discusses the alleged use of force, the remedy he seeks is that the disciplinary report "be overturned" and "taken off [his] DR list." <u>Id.</u> In the formal grievance 2401-209-022, Fletcher stated:

> Log # 209-231594.[11] This is [an] appeal for administrative remedy or appeal. On 12-28-2023, I was found guilty of violation code 0115 title[d] Batt/Att/CO, was giv[en] 60 days DC, 260 days lost gain time, and 9 day credit. The DR statement of facts is wrote in a false statement which is against the law. At no time did Officer Thomas say, "show me a pass." He kicked my bed [when] I was sleeping [and] said, "get your fucking ass up before I kick your ass." I was startled, jumped up and said, "who you talking to?" He grabbed my arm. I pulled away. He pushed me over locker rack. I got up with him and held on. At no time did I try to hit him I was just coming fully awake when other staff got there[,] I laid flat [with] hands on ground. Someone started punching me in the side of the temple [until] a higher white shirt said, "stop

---

[11] This is the log number for Fletcher's Disciplinary Report stemming from the December 20, 2023 incident. <u>See</u> Doc. 1-1 at 19–20, 23–24.

> hitting him." Inmate in bed F1147s yelled, "do not hit
> him again." Look at camera. At no time did Officer
> Thomas check any body's passes like he stated. That's
> a false statement on a legal document. Plus, I was hit
> punched in my temple[,] my other temple was against
> the floor it's now out of shape. I have a plate in temple
> [and] take seizure meds. I'm in pain. Eyesight is
> blurry. Put in sick calls. This DR should be took [sic]
> off my DR list [and] overturned. I'm also going to seek
> damages for pain and damage. I'm also requesting the
> auto video of F1 Bay sleeping be kept from the time he
> came in dorm [until] leaving.

Doc. 1-1 at 18, 22 (cleaned up) (footnote not in original). Fletcher included

documents related to his disciplinary report with his grievance. Id. at 19–20,

23–24. After review, prison officials denied the grievance on January 19, 2024,

finding Fletcher had not "provided evidence to substantiate [his] allegation

that the Reporting Officer furnished false information," the requested video

did not support his statement, Fletcher chose to enter a plea of no contest to

the charge, and Fletcher failed to provide "evidence, reason, information, or

documentation that would warrant the consideration of overturning this

disciplinary charge." Id. at 17, 21. In Appeal 24-6-04261, Fletcher wrote:

> This is a request for administrative remedy for a DR
> appeal that was denied on 1-19-24 at the
> institution[al] level for DR that I was found guilty on
> 12-28-2023 for violation code 115 [title]
> Battery/Att/CO. Was [given] 60DC and CM1. This DR
> Log # 2401-209-022. I was told to plead no contest by
> Lt. Cartwright who is the housing LT 5 days a week in
> K dorm at RMC. He is the officer that jumped down
> and punched me in the temple with a closed fist [until]
> Major Starling told him to stop hitting me in front [of]

26

the whole dorm on camera. I requested all 4 bay area camera recordings be kept plus the housing log. My temple has a plate in it. Now it's bent and my eyesight in left eye is all blurry. I sent 303 direct grievance to the secretary['s] office was sealed in a[n] envelope. This was 1-4-2024 about abuse. I've never heard anything. I put in 3 informal grievances about abuse and requesting the video and housing log be kept and I never got them back. I put in 5 sick calls about temple and eyesight never got seen and [illegible]. I was told there was no record of sick calls. The nurse's station was right beside Lt. Cartwright['s] office. I put sick calls in on 12-27-2023 and on 1-3-2024, all on video on wing 2 K-Dorm cell 2107 at sick call, same with grievances. Grievances sent to Tallahassee on 1-4-2024. Lt. Cartwright sat in DR hearing. I was warned when going to per confinement not to say nothing. Officer Thomas never asked nobody for a pass. He lied on a legal document. He passed by 3 wheelchairs and a walker, kicked my bed, I stood up. He had said get your ass up before I kick it. When I stood up, [I] asked "who you talking to?" He grabbed my arm hard. I pulled away. He pushed me over a[n] empty locker frame not tried to direct me on a bed. I grabbed him so he could not hit me. When laying on floor not [resisting] Lt. Cartright came running in, jumped down, and punched me 4 or 5 time[s] with closed fist in temple. It's bent and eyesight is really bad. I'm in pain. DR should be overturned. I'm seeking money for damage.

Id. at 16 (cleaned up). On February 9, 2024, C. Neel denied the appeal, stating that Fletcher entered a voluntary plea of no contest to the charge and statement of facts as written and he had "not presented sufficient evidence or information to warrant overturning the disciplinary report." Id. at 15.

In this grievance and appeal, Fletcher stated he was requesting an

administrative remedy or appeal based on the DR violation and a "DR appeal," repeatedly alleged that Officer Thomas provided false information, and requested that his disciplinary report be overturned. It is clear by the institution's responses that the prison officials understood these grievances as challenges to the disciplinary report, not grievances regarding an alleged excessive use of force. Accordingly, the Court finds Formal Grievance 2401-209-022 and Appeal 24-6-04261 did not sufficiently alert officials to the Eighth Amendment violations Fletcher raises in his Complaint. See Hamze, 2024 WL 111923, at *8; Berry, 2021 WL 1561493, at *6; Lawson, 2016 WL 5219466, at *7.

Fletcher also references "DOC Number[] 24-6-06339" in his Response, see Response at 1, but he did not submit a copy of that grievance with his Complaint or his Response, see generally Doc. 1-1 at 1–28; Response. However, Defendants' submission shows that this appeal was again regarding medical grievances, rather than the excessive use of force. See Doc. 11-1 at 1–2 (stating that only three of the appeals were "directly related to the use of force on December 20, 2023," and that all three of those appeals were returned to Fletcher without action), 4–5 (table of appeals showing that appeal 24-6-06339 was related to medical allegations and denied rather than returned). Accordingly, this grievance appeal would be insufficient to show exhaustion of Fletcher's Eighth Amendment claims of excessive use of force or failure to

intervene.

Turning to Fletcher's allegations of missing grievances, the Court does not find Fletcher has shown the grievance process was unavailable to him. "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting Turner, 541 F.3d at 1085). Here, Defendants have established that FDOC has an administrative grievance process and that Fletcher failed to adequately resort to that process to exhaust his claims. Through Fletcher's assertions that his grievances "were being lost, my letters never sent or disregarded," see Response at 2, he seemingly suggests the grievance process was unavailable because prison officials interfered with the grievance process. However, his vague allegations fail to satisfy his burden and any suggestion that relevant informal or formal grievances were not logged lacks credibility. First, it is evident that Fletcher knows how to access and navigate the FDOC's grievance process, as he filed seventeen informal grievances, six formal grievances, and five appeals, in just three months. See Docs. 11-1; 11-2. Second, Fletcher provides no details about the allegedly missing grievances, such as when or how he submitted them, what he wrote in them, or how they would have been

different from those discussed here. While he mentions in some of the attached grievances that he felt some grievances were missing, he does not state in those grievances or in his Response whether he attempted to proceed to the next step of the grievance process when he did not receive a timely response from the appropriate prison official. See Fla. Admin. Code R. 33-103.011(4) (notifying inmates how to proceed if they do not receive a timely response to a grievance at any step: expiration of a time limit at any step in the process shall entitle [an inmate] to proceed to the next step of the grievance process"); see also Turner, 541 F.3d at 1084 (finding that a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within thirty days.).

Lastly, it strains credulity that there were grievances related to the allegations in this action that were not routed to the grievance coordinator given that Fletcher successfully filed twenty-eight grievances in a three-month span, many of which discussed the December 20, 2023 incident, and that the only person with a key to the grievance box is the grievance coordinator. See Doc. 11-3 at 2. In other words, placing a grievance in the grievance box fairly ensures it will be routed to the grievance coordinator absent obvious and intentional tampering by a prison officer, of which Fletcher makes no such allegation. For the above reasons, the Court finds Defendants have carried

their burden to demonstrate Fletcher did not exhaust his administrative remedies for the claims within his Complaint before initiating this action. Fletcher's Eighth Amendment claims of excessive use of force and failure to intervene are thus due to be dismissed.

## C. <u>State Law Claims</u>

In the Complaint, in addition to his federal § 1983 claims, Fletcher also asserts claims for relief under Florida state law for assault and battery. <u>See</u> Complaint at 3, 6. However, the Court has determined that Fletcher's federal claims over which the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are due to be dismissed. Thus, the Court must now consider whether to continue to exercise supplemental jurisdiction over the remaining state law claims.

"The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." <u>Raney v. Allstate Ins. Co.</u>, 370 F.3d 1086, 1088–89 (11th Cir. 2004). The Court may decline to exercise jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling
reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[12] Notably, "[a]ny one of the section 1367(c) factors is
sufficient to give the district court discretion to dismiss a case's supplemental
state law claims." <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 743
(11th Cir. 2006). However, upon determining that it has the discretion to
decline jurisdiction, "[a district court] should consider the traditional
rationales for pendent jurisdiction, including judicial economy and convenience
in deciding whether or not to exercise that jurisdiction." <u>Palmer v. Hosp. Auth.
of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994). Upon due
consideration, the Court finds that judicial economy and convenience would
not be served by retaining jurisdiction over Fletcher's state law claims. Thus,
the Court declines to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the § 1983
claims in the Complaint, over which the Court has original jurisdiction, are
due to be dismissed. What remain are uniquely state law claims that are best
addressed by the state courts. The Court has not issued any dispositive rulings
pertaining to the state law claims, and no discovery deadlines have been set.
Thus, the procedural posture of this case weighs in favor of declining

---

[12] In § 1367, Congress codified the concepts of pendent and ancillary
jurisdiction under the umbrella label of supplemental jurisdiction. <u>Artis v. District of
Columbia</u>, 583 U.S. 71, 74 (2018).

jurisdiction to allow the case to proceed fully in state court. Moreover, when, as here, the federal claim is dismissed prior to trial, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims." Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Fletcher's remaining state law claims. Accordingly, Fletcher's state law claims for assault and battery are due to be dismissed without prejudice to Fletcher refiling these claims in the appropriate state court.

### D. <u>Defendants' Remaining Arguments</u>

Because Fletcher's claims against Defendants are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement and the Court has decided not to continue to exercise supplemental jurisdiction, the Court need not address Defendants' arguments that Fletcher failed to give pre-suit notice for his state law claims, that his claim is conclusively contradicted by video records, that the action should be dismissed due to Fletcher's failure to disclose his litigation history, that Defendants are entitled to qualified immunity for claims brought against them in their official capacities, and that Fletcher is barred from seeking punitive damages.

Accordingly, it is

**ORDERED:**

1.     Fletcher's request to terminate Defendant Kody Williams as a Defendant from this action is **GRANTED**. All claims against Kody Williams are dismissed.

2.     Defendants' Motion to Dismiss (Doc. 11) is **GRANTED** to the extent that Defendants seek dismissal for Fletcher's failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

3.     Fletcher's state law claims are **DISMISSED without prejudice** to refiling in the appropriate state court.

4.      The Clerk of the Court is directed to update Fletcher's address to South Bay Correctional Facility, 600 U.S. Highway 27 South, South Bay, Florida 33493.

5.      The Clerk shall enter judgment dismissing Defendant Kody Williams with prejudice and all remaining claims in this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of September, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JaxP-12
C:      Albert Leon Fletcher, 103151
        Counsel of Record